UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
Caption in Compliance with D.N.J. LBR 9004-2(c)

**McMANIMON, SCOTLAND**
 **& BAUMANN, LLC**
75 Livingston Avenue, Suite 201
Roseland, NJ 07068
(973) 622-1800
Richard D. Trenk (rtrenk@msbnj.com)
Robert S. Roglieri (rroglieri@msbnj.com)
*Counsel for Reorganized Debtors,*
*Ki Hyung Kim & Hye Sook Ha*

**Order Filed on March 31, 2020**
**by Clerk**
**U.S. Bankruptcy Court**
**District of New Jersey**

| | |
|---|---|
| In re: | Chapter 11 |
| KI HYUNG KIM & HYE SOOK HA, | Case No. 19-24863 (JKS) |
| Debtors. | Hearing Date and Time: March 31, 2020 at 10:00 a.m. |

**ORDER (I) APPROVING THE SALE OF THE REORGANIZED DEBTORS' REAL PROPERTY FREE AND CLEAR OF ANY LIENS, CLAIMS, AND ENCUMBRANCES, PURSUANT TO 11 U.S.C. § 363(b), (f), AND (m); AND (II) GRANTING RELATED RELIEF**

The relief set forth on the following page, numbered two (2) through eight (8), is hereby

**ORDERED**.

**DATED: March 31, 2020**

_____

Honorable John K. Sherwood
United States Bankruptcy Court

(Page 2)

| | |
|---|---|
| Debtor: | Ki Hyung Kim & Hye Sook Ha |
| Case No.: | 19-24863 (JKS) |
| Caption of Order: | Order (i) Approving the Sale of the Reorganized Debtors' Real Property Free and Clear of Any Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. § 363(b), (f), and (m); and (ii) Granting Related Relief |

**THIS MATTER**, having been opened to the Court upon the Motion of Ki Hyung Kim and Hye Sook Ha, the reorganized Chapter 11 debtors (collectively, the "<u>Reorganized Debtors</u>"), seeking entry of an Order approving the sale of the Reorganized Debtors' real property located at 41 Brenner Place, Alpine, New Jersey (the "<u>Alpine Residence</u>") to Pravin and Gita Bhanderi (collectively, the "<u>Buyers</u>"), for an all cash offer of $3,300,00 (the "<u>Purchase Price</u>"), free and clear of any liens, claims and encumbrances, pursuant to 11 U.S.C. § 363(b), (f), and (m); and (ii) such other further relief as is just and equitable (the "<u>Motion</u>"); and the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O), and (iii) notice of the Motion and proposed form of order was served on those parties required to receive notice pursuant to Title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and the District of New Jersey Local Bankruptcy Rules; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and the Court having determined that the relief sought in the Motion is in the best interests of the Reorganized Debtors, the estate and creditors; and the Court having considered the pleadings filed by the Reorganized Debtors in support of the Motion and any opposition thereto, if any; and for other good cause having been shown,

**THE COURT HEREBY FINDS AND DETERMINES THAT**:

(Page 3)

| | |
|---|---|
| Debtor: | Ki Hyung Kim & Hye Sook Ha |
| Case No.: | 19-24863 (JKS) |
| Caption of Order: | Order (i) Approving the Sale of the Reorganized Debtors' Real Property Free and Clear of Any Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. § 363(b), (f), and (m); and (ii) Granting Related Relief |

A.    The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).  Venue of the Motion is proper pursuant to 27 U.S.C. §§ 1408 and 1409.

B.    Approval of the sale at this time will maximize the value of the estate, and hence, such approval is in the best interest of the Reorganized Debtors and their creditors.

C.    The Reorganized Debtors have articulated sound business reasons for consummating the sale and for selling the Alpine Residence, and it is a reasonable exercise of the Reorganized Debtors' business judgment to consummate the sale.

D.    The Reorganized Debtors may sell the Alpine Residence to the Buyers in accordance with the terms and conditions set forth in the Agreement of Sale, free and clear of any liens, claims, interests and encumbrances in accordance with, and to the extent permitted by, Bankruptcy Code section 363(f).

E.    The Alpine Residence is being sold "**<u>AS IS, WHERE IS</u>**" with no representations or warranties of any kind.

F.    The Purchase Price to be paid for the Alpine Residence is fair consideration and constitutes reasonably equivalent value for the Alpine Residence.

G.    The Buyers are purchasers in good faith, as that term is used in Bankruptcy Code section 363(m), with respect to the sale.  The sale was negotiated, proposed and entered into by the parties in good faith, from arms' length bargaining positions and without collusion, and therefore, the Buyers are entitled to the protections of Bankruptcy Code section 363(m) with

(Page 4)

| | |
|---|---|
| Debtor: | Ki Hyung Kim & Hye Sook Ha |
| Case No.: | 19-24863 (JKS) |
| Caption of Order: | Order (i) Approving the Sale of the Reorganized Debtors' Real Property Free and Clear of Any Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. § 363(b), (f), and (m); and (ii) Granting Related Relief |

respect to the sale. Neither the Reorganized Debtors nor the Buyers have engaged in any conduct that would cause or permit the sale to be voided, nor that would justify the imposition of costs or damages, under Bankruptcy Code section 363(n).

H.      As evidenced by the certificates of service filed with the Court, (i) proper, timely, adequate and sufficient notice of the Motion has been provided in accordance with Bankruptcy Code sections 363 and Bankruptcy Rules 2002, 6004, 9007, and 9014; (ii) such notice was good, sufficient and appropriate under the particular circumstances; and (iii) no other or further notice of the Motion or the entry of this order shall be required.

I.      Non-debtor parties holding either valid liens, claims, interests or encumbrances with respect to the Alpine Residence who did not object, or who withdrew their objections to the Motion are deemed to have consented to the sale of the Alpine Residence free and clear of all liens, claims, interests and encumbrances pursuant to Bankruptcy Code section 363(f)(2).

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

1.      All of the findings of fact and conclusions of law set forth above are incorporated herein by reference, and the Motion is granted as set forth herein.

2.      The Agreement of Sale (attached as **Exhibit A** hereto) be, and hereby is, approved in its entirety.

3.      At closing, NewBank shall make a carveout payment of $175,000 to the Reorganized Debtors' counsel (the "Carveout Amount"). Under no circumstances shall any lien attach to the Carveout Amount.

(Page 5)

Debtor:            Ki Hyung Kim & Hye Sook Ha

Case No.:          19-24863 (JKS)

Caption of Order:  Order (i) Approving the Sale of the Reorganized Debtors' Real Property Free and Clear of
                   Any Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. § 363(b), (f), and (m); and (ii)
                   Granting Related Relief

---

4.      The sale, and all ancillary documents and transactions contemplated therein, including the transfer of the Alpine Residence by the Reorganized Debtors to the Buyers is approved and authorized under the Bankruptcy Code, including sections 105 and 363 thereof.

5.      The transfer of the Alpine Residence by the Reorganized Debtors to the Buyers upon closing will be a valid, legal, and effective transfer of the Alpine Residence notwithstanding any requirement for approval or consent by any entity (as defined in section 101(15) of the Bankruptcy Code).

6.      The sale of the Alpine Residence constitutes legal, valid, and effective transfers and shall vest the Buyers with legal title in and to the Alpine Residence.

7.      The sale shall be, free and clear of any liens, claims, and encumbrances pursuant to 11 U.S.C. § 363(b), (f) and (m).

8.      Pursuant to Bankruptcy Code section 363(b), the Reorganized Debtors are hereby authorized to sell and transfer the Alpine Residence pursuant to and in accordance with the terms and conditions set forth in the Agreement of Sale and to take all other actions as are necessary to effectuate all of the terms thereof and to consummate the transactions contemplated therein, including, without limitation, such actions as are necessary to execute and deliver all documents and instruments referenced in and/or contemplated in connection with the sale of the Alpine Residence without any further authorization of the Court.

(Page 6)

| | |
|---|---|
| Debtor: | Ki Hyung Kim & Hye Sook Ha |
| Case No.: | 19-24863 (JKS) |
| Caption of Order: | Order (i) Approving the Sale of the Reorganized Debtors' Real Property Free and Clear of Any Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. § 363(b), (f), and (m); and (ii) Granting Related Relief |

9.      The Reorganized Debtors and the Buyers shall not be required to comply with the New Jersey Bulk Sale Statute (N.J.S.A. Section 54:50-38 and any related Sections) and pursuant to the within sale, shall be exempt from payment of real estate transfer taxes.

10.      The Buyers are deemed to be good faith purchasers pursuant to 11 U.S.C. § 363(m).

11.      The Reorganized Debtors are selling the Alpine Residence "**AS IS, WHERE IS**" without any representation, warranties, or guarantees of any kind.

12.      In addition to payment of standard closing costs, the Reorganized Debtors are authorized to make payment to Realty 7 LLC (as the court-approved real estate broker) at closing for the real estate commission earned in accordance with the Real Estate Listing/Commission Agreement attached filed with the Court at Docket No. 86-1 in the amount of $66,350 based on the commission statement annexed hereto as **Exhibit B**.  In addition to payment of standard closing costs, the Reorganized Debtors are authorized to make payment to Weichert, Realtors in the amount of $65,650 based on the commission statement annexed hereto as **Exhibit C**.

13.      The stay provision under Bankruptcy Rule 6004(h) be and hereby is waived and, therefore, not applicable to this sale.

14.      New Millennium Bank has a valid first mortgage upon the Alpine Residence with an allowed balance due as of April 1, 2020 in the amount $2,149,561.75, and a per diem of $237.88 (the "New Millennium Payoff Amount").

15.      The New Millennium Payoff Amount, including any applicable per diem amount, shall be wired to New Millennium at the closing upon the sale of the Alpine Residence.

(Page 7)

| | |
|---|---|
| Debtor: | Ki Hyung Kim & Hye Sook Ha |
| Case No.: | 19-24863 (JKS) |
| Caption of Order: | Order (i) Approving the Sale of the Reorganized Debtors' Real Property Free and Clear of Any Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. § 363(b), (f), and (m); and (ii) Granting Related Relief |

16.    NewBank has a valid second mortgage upon the Alpine Residence with an allowed balance due as of April 1, 2020 in the amount of $2,194,496.40, and a per diem of $388.71314 (the "NewBank Kumkang Payoff").   NewBank has a valid third mortgage upon the Alpine Residence with an allowed balance due as of April 1, 2020 in the amount of $1,726,185.20, and a per diem of $306.37838 (the "NewBank Deoksung Payoff").   NewBank has a valid fourth mortgage upon the Alpine Residence with an allowed balance due as of April 1, 2020 in the amount of $1,612,870.60, and a per diem of $287.66660 (the "NewBank Youngchuk Payoff").

17.    At the closing, NewBank shall receive a wire of the balance of the sale proceeds to pay the Newbank Kumkang Payoff, the NewBank Deoksung Payoff and the NewBank Youngchuk Payoff (in that order, to the extent funds are available) after payment of the New Millennium Payoff Amount, the Carveout Amount, broker's commission and other standard closing costs.

18.    All objections to the Motion and the relief requested therein that have not been withdrawn, waived or settled, and all reservations of rights included in such objections, are hereby overruled on the merits and denied.  New Millennium has withdrawn its Limited Objection based on the entry of this Order.

19.    This Court shall retain exclusive jurisdiction to enforce the provisions of this Order and to resolve any issue or dispute concerning the interpretation, implementation or enforcement of this Order or the rights and duties of the parties hereunder or thereunder, including, without limitation, any issue of dispute concerning the transfer of the Alpine Residence, free and clear of liens and claims.

(Page 8)

| | |
|---|---|
| Debtor: | Ki Hyung Kim & Hye Sook Ha |
| Case No.: | 19-24863 (JKS) |
| Caption of Order: | Order (i) Approving the Sale of the Reorganized Debtors' Real Property Free and Clear of Any Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. § 363(b), (f), and (m); and (ii) Granting Related Relief |

20.     The provisions of this Order shall be self-executing, and neither the Reorganized Debtors, the Buyers, nor any other party shall be required to execute or file releases, termination statements, assignments, cancellations, consents or other instruments to effectuate, consummate and/or implement the provisions hereof with respect to such sale; provided, however, that this paragraph shall not excuse such parties from performing any and all of their respective obligations under the sale of the Alpine Residence.

21.     The sale of the Alpine Residence approved by this Order is not subject to avoidance or the imposition of costs and damages pursuant to Bankruptcy Code section 363(n).

22.     The sale and/or transfer of the Alpine Residence is in furtherance of a plan of reorganization in this Bankruptcy Case and, as a result, the sale and/or transfer of the Alpine Residence is exempt from any state or local realty transfer tax or similar tax pursuant to 11 U.S.C. § 1146(a).

23.     No bulk sale or any similar law of any state, including but not limited to N.J.S.A. 54:32B-22(c) and N.J.S.A. 54:50-38, apply in any way to the sale and transfer of the Properties hereunder.

24.     The consideration to be provided by the Buyers in exchange for the Alpine Residence is hereby deemed to constitute reasonably equivalent value and fair consideration.

25.     A true copy of this Order shall be served on all parties who received notice of the Motion within seven (7) days of the date hereof.

# Exhibit A

STATEWIDE NEW JERSEY REALTORS® STANDARD FORM
OF REAL ESTATE SALES CONTRACT



©2018 New Jersey REALTORS®, Inc.

THIS FORM MAY BE USED ONLY IN THE SALE OF A ONE TO FOUR-FAMILY RESIDENTIAL PROPERTY
OR VACANT ONE-FAMILY LOTS. THIS FORM IS SUITABLE FOR USE ONLY WHERE THE SELLER HAS
PREVIOUSLY EXECUTED A WRITTEN LISTING AGREEMENT.

THIS IS A LEGALLY BINDING CONTRACT THAT WILL BECOME FINAL WITHIN THREE BUSINESS DAYS.
DURING THIS PERIOD YOU MAY CHOOSE TO CONSULT AN ATTORNEY WHO CAN REVIEW AND CANCEL THE
CONTRACT. SEE SECTION ON ATTORNEY REVIEW FOR DETAILS.

## TABLE OF CONTENTS

1. PARTIES AND PROPERTY DESCRIPTION
2. PURCHASE PRICE
3. MANNER OF PAYMENT
4. SUFFICIENT ASSETS
5. ACCURATE DISCLOSURE OF SELLING PRICE
6. ITEMS INCLUDED IN SALE
7. ITEMS EXCLUDED FROM SALE
8. DATES AND TIMES FOR PERFORMANCE
9. CERTIFICATE OF OCCUPANCY AND ZONING COMPLIANCE
10. MUNICIPAL ASSESSMENTS
11. QUALITY AND INSURABILITY OF TITLE
12. POSSESSION, OCCUPANCY AND TENANCIES
13. LEAD-BASED PAINT AND/OR LEAD-BASED PAINT HAZARD
14. POINT OF ENTRY TREATMENT SYSTEMS
15. CESSPOOL REQUIREMENTS
16. INSPECTION CONTINGENCY CLAUSE
17. MEGAN'S LAW STATEMENT
18. MEGAN'S LAW REGISTRY
19. NOTIFICATION REGARDING OFF-SITE CONDITIONS
20. AIR SAFETY AND ZONING NOTICE
21. BULK SALES
22. NOTICE TO BUYER CONCERNING INSURANCE
23. MAINTENANCE AND CONDITION OF PROPERTY
24. RISK OF LOSS
25. INITIAL AND FINAL WALK-THROUGHS
26. ADJUSTMENTS AT CLOSING
27. FAILURE OF BUYER OR SELLER TO CLOSE
28. CONSUMER INFORMATION STATEMENT ACKNOWLEDGEMENT
29. DECLARATION OF BROKER(S) BUSINESS RELATIONSHIP(S)
30. BROKERS' INFORMATION AND COMMISSION
31. EQUITABLE LIEN
32. DISCLOSURE THAT BUYER IS SELLER IS A REAL ESTATE LICENSEE
33. BROKERS TO RECEIVE CLOSING DISCLOSURE AND OTHER DOCUMENTS
34. PROFESSIONAL REFERRALS
35. ATTORNEY-REVIEW CLAUSE
36. NOTICES
37. NO ASSIGNMENT
38. ELECTRONIC SIGNATURES AND DOCUMENTS
39. CORPORATE RESOLUTIONS
40. ENTIRE AGREEMENT; PARTIES LIABLE
41. APPLICABLE LAWS
42. ADDENDA
43. ADDITIONAL CONTRACTUAL PROVISIONS

1. PARTIES AND PROPERTY DESCRIPTION:

Pravin Bhanderi _____ ("Buyer"), Gita Bhanderi _____, ("Buyer"),

_____ ("Buyer"), _____, ("Buyer"),

whose address is/are 61 Bethany Circle, Closter, NJ 07624 _____

AGREES TO PURCHASE FROM

Ki Kim _____ ("Seller"), Hye Ha _____, ("Seller"),

_____ ("Seller"), _____, ("Seller"),

whose address is/are 41 Brenner Place, Alpine, NJ 07620-1105 _____

THROUGH THE BROKER(S) NAMED IN THIS CONTRACT AT THE PRICE AND TERMS STATED BELOW, THE
FOLLOWING PROPERTY:

Property Address: 41 Brenner Place, Alpine, NJ 07620 _____

shown on the municipal tax map of _____ County Bergen

as Block 00059 Lot 00005 (the "Property").

THE WORDS "BUYER" AND "SELLER" INCLUDE ALL BUYERS AND SELLERS LISTED ABOVE.

2. PURCHASE PRICE:

| | |
|---|---|
| TOTAL PURCHASE PRICE | $ 3,300,000 |
| INITIAL DEPOSIT | $ 50,000 |
| ADDITIONAL DEPOSIT | $ 500,000 |
| MORTGAGE | $ 0 |
| BALANCE OF PURCHASE PRICE | $ 2,750,000 |

Buyer's Initials: PB GB

Seller's Initials: H.S.H

**3. MANNER OF PAYMENT:**

(A) INITIAL DEPOSIT to be paid by Buyer to ☐ Listing Broker ☐ Participating Broker ☐ Buyer's Attorney ☐ Title Company ☒ Other ___seller's attorney_____, on or before _____ (date) (if left blank, then within five (5) business days after the fully signed Contract has been delivered to both the Buyer and the Seller).

*10 DAY AFTER THE END OF ATTY REVIEW (A) (B)*

(B) ADDITIONAL DEPOSIT to be paid by Buyer to the party who will be responsible for holding the escrow who is identified below on or before ~~10 days after UG~~ _____(date) (if left blank, then within ten (10) calendar days after the fully signed Contract has been delivered to both the Buyer and the Seller).

(C) ESCROW: All initial and additional deposit monies paid by Buyer shall be held in escrow in the NON-INTEREST BEARING TRUST ACCOUNT of __Seller's Attorney_____, ("Escrowee"), until the Closing, at which time all monies shall be paid over to Seller. The deposit monies shall not be paid over to Seller prior to the Closing, unless otherwise agreed in writing by both Buyer and Seller. If Buyer and Seller cannot agree on the disbursement of these escrow monies, the Escrowee may place the deposit monies in Court requesting the Court to resolve the dispute.

(D) IF PERFORMANCE BY BUYER IS CONTINGENT UPON OBTAINING A MORTGAGE:

If payment of the purchase price requires a mortgage loan other than by Seller or other than assumption of Seller's mortgage, Buyer shall apply for the loan through any lending institution of Buyer's choice in writing on lender's standard form within ten (10) calendar days after the attorney-review period is completed or, if this Contract is timely disapproved by an attorney as provided in the Attorney-Review Clause Section of this Contract, then within ten (10) calendar days after the parties agree to the terms of this Contract, and use best efforts to obtain it. Buyer shall supply all necessary information and fees required by the proposed lender and shall authorize the lender to communicate with the real estate brokers(s) and involved attorney(s). Buyer shall obtain a written commitment from the lending institution to make a loan on the property under the following terms:

Principal Amount $ **0**_____ Type of Mortgage: ☐ VA ☐ FHA ☐ Conventional ☐ Other_____
Term of Mortgage: **0**_____ years, with monthly payments based on a **0**_____ year payment schedule.

The written mortgage commitment must be delivered to Seller's agent, who is the Listing Broker identified in Section 30, and Seller's attorney, if applicable, no later than _____ (date) (if left blank, then within thirty (30) calendar days after the attorney-review period is completed or, if this Contract is timely disapproved by an attorney as provided in the Attorney-Review Clause Section of this Contract, then within thirty (30) calendar days after the parties agree to the terms of this Contract). Thereafter, if Buyer has not obtained the commitment, then either Buyer or Seller may void this Contract by written notice to the other party and Broker(s) within ten (10) calendar days of the commitment date or any extension of the commitment date, whichever is later. If this Contract is voided, the deposit monies paid by Buyer shall be returned to Buyer notwithstanding any other provision in this Contract, provided, however, if Seller alleges in writing to Escrowee within said ten (10) calendar days of the commitment date or any extension of the commitment date, whichever is later, that the failure to obtain the mortgage commitment is the result of Buyer's bad faith, negligence, intentional conduct or failure to diligently pursue the mortgage application, then Escrowee shall not return the deposit monies to Buyer without the written authorization of Seller.

(E) BALANCE OF PURCHASE PRICE: The balance of the purchase price shall be paid by Buyer in cash, or by certified, cashier's or trust account check.

Payment of the balance of the purchase price by Buyer shall be made at the closing, which will take place on _____ ~~2/18/2020~~ 5/18/2020_____(date) at the office of Buyer's closing agent or such other place as Seller and Buyer may agree ("the Closing").

**4. SUFFICIENT ASSETS:**

Buyer represents that Buyer has or will have as of the Closing, all necessary cash assets, together with the mortgage loan proceeds, to complete the Closing. Should Buyer not have sufficient cash assets at the Closing, Buyer will be in breach of this Contract and Seller shall be entitled to any remedies as provided by law.

**5. ACCURATE DISCLOSURE OF SELLING PRICE:**

Buyer and Seller certify that this Contract accurately reflects the gross sale price as indicated in Section 2 of this Contract. Buyer and Seller understand and agree that this information shall be disclosed to the Internal Revenue Service and other government agencies as required by law.

**6. ITEMS INCLUDED IN SALE:**

The Property includes all fixtures permanently attached to the building(s), and all shrubbery, plantings and fencing, gas and electric fixtures, cooking ranges and ovens, hot water heaters, flooring, screens, storm sashes, shades, blinds, awnings, radiator covers, heating apparatus and sump pumps, if any, except where owned by tenants, are included in this sale. All of the appliances shall be in working

New Jersey REALTORS® Form 118-Statewide | 10/2019 Page 3 of 15

Buyer's Initials: _____  Seller's Initials: _____ H.S.H

111 order as of the Closing. Seller does not guarantee the condition of the appliances after the Deed and affidavit of title have been delivered
112 to Buyer at the Closing. The following items are also specifically included (If reference is made to the MLS Sheet and/or any other
113 document, then the document(s) referenced should be attached.):

114 Per NJMLS# 1951469
115
116
117
118 **7. ITEMS EXCLUDED FROM SALE:** (If reference is made to the MLS Sheet and/or any other document, then the document(s)
119 referenced should be attached.):
120 N/A
121
122
123
124 **8. DATES AND TIMES FOR PERFORMANCE:**
125 Seller and Buyer agree that all dates and times included in this Contract are of the essence. This means that Seller and Buyer must satisfy
126 the terms of this Contract within the time limits that are set in this Contract or will be in default, except as otherwise provided in this
127 Contract or required by applicable law, including but not limited to if the Closing has to be delayed either because a lender does not timely
128 provide documents through no fault of Buyer or Seller or for three (3) business days because of the change of terms as required by the
129 Consumer Financial Protection Bureau.
130
131 If Seller requests that any addendum or other document be signed for a property it owns in connection with this Contract, "final execu-
132 tion date," "acknowledgment date," or similar language contained in such document that sets the time period for the completion of any
133 conditions or contingencies, including but not limited to inspections and financing, shall mean that the time will begin to run after the
134 attorney-review period is completed or, if this Contract is timely disapproved by an attorney as provided in the Attorney-Review Clause
135 Section of this Contract, then from the date the parties agree to the terms of this Contract.
136
137 **9. CERTIFICATE OF OCCUPANCY AND ZONING COMPLIANCE:**
138 Seller makes no representations concerning existing zoning ordinances, except that Seller's use of the Property is not presently in violation
139 of any zoning ordinances.
140
141 Some municipalities may require a Certificate of Occupancy or Housing Code Letter to be issued. If any is required for this Property,
142 Seller shall obtain it at Seller's expense and provide to Buyer prior to Closing and shall be responsible to make and pay for any repairs
143 required in order to obtain the Certificate or Letter. However, if this expense exceeds $_____ (if left blank, then 1.5% of the
144 purchase price) to Seller, then Seller may terminate this Contract and refund to Buyer all deposit monies plus Buyer's reasonable expenses,
145 if any, in connection with this transaction unless Buyer elects to make repairs in excess of said amount at Buyer's expense, in which event
146 Seller shall not have the right to terminate this Contract. In addition, Seller shall comply with all New Jersey laws, and local ordinances,
147 including but not limited to smoke detectors, carbon monoxide detectors, fire extinguishers and indoor sprinklers, the cost of which shall
148 be paid by Seller and not be considered as a repair cost.
149
150 **10. MUNICIPAL ASSESSMENTS:** (Seller represents that Seller ☐ has ☐ has not been notified of any such municipal assessments as
151 explained in this Section.)
152
153 Title shall be free and clear of all assessments for municipal improvements, including but not limited to municipal liens, as well as
154 assessments and liabilities for future assessments for improvements constructed and completed. All confirmed assessments and all
155 unconfirmed assessments that have been or may be imposed by the municipality for improvements that have been completed as of the
156 Closing are to be paid in full by Seller or credited to Buyer at the Closing. A confirmed assessment is a lien against the Property. An
157 unconfirmed assessment is a potential lien that, when approved by the appropriate governmental entity, will become a legal claim against
158 the Property.
159
160 **11. QUALITY AND INSURABILITY OF TITLE:**
161 At the Closing, Seller shall deliver a duly executed Bargain and Sale Deed with Covenant as to Grantor's Acts or other Deed satisfactory
162 to Buyer. Title to the Property will be free from all claims or rights of others, except as described in this Section and Section 12 of this
163 Contract. The Deed shall contain the full legal description of the Property.
164
165 This sale will be subject to utility and other easements and restrictions of record, if any, and such state of facts as an accurate survey
166 might disclose, provided such easement or restriction does not unreasonably limit the use of the Property. Generally, an easement is a
167 right of a person other than the owner of property to use a portion of the property for a special purpose. A restriction is a recorded
168 limitation on the manner in which a property owner may use the property. Buyer does not have to complete the purchase, however,
169 if any easement, restriction or facts disclosed by an accurate survey would substantially interfere with the use of the Property for
170 residential purposes. A violation of any restriction shall not be a reason for Buyer refusing to complete the Closing as long as the title

New Jersey REALTORS® Form 118-Statewide | 10/2019 Page 4 of 13

Buyer's Initials: _____

Seller's Initials: _____ H.S.H

171  company insures Buyer against loss at regular rates. The sale also will be made subject to applicable zoning ordinances, provided that
172  the ordinances do not render title unmarketable.

174  Title to the Property shall be good, marketable and insurable, at regular rates, by any title insurance company licensed to do business
175  in New Jersey, subject only to the claims and rights described in this Section and Section 12. Buyer agrees to order a title insurance
176  commitment (title search) and survey, if required by Buyer's lender, title company or the municipality where the Property is located,
177  and to furnish copies to Seller. If Seller's title contains any exceptions other than as set forth in this Section, Buyer shall notify Seller
178  and Seller shall have thirty (30) calendar days within which to eliminate those exceptions. Seller represents, to the best of Seller's
179  knowledge, that there are no restrictions in any conveyance or plans of record that will prohibit use and/or occupancy of the Property
180  as a _single_____ family residential dwelling. Seller represents that all buildings and other improvements on the Property are
181  within its boundary lines and that no improvements on adjoining properties extend across boundary lines of the Property.

183  If Seller is unable to transfer the quality of title required and Buyer and Seller are unable to agree upon a reduction of the purchase
184  price, Buyer shall have the option to either void this Contract, in which case the monies paid by Buyer toward the purchase price shall
185  be returned to Buyer, together with the actual costs of the title search and the survey and the mortgage application fees in preparing for
186  the Closing without further liability to Seller, or to proceed with the Closing without any reduction of the purchase price.

188  **12. POSSESSION, OCCUPANCY AND TENANCIES:**
189  **(A) Possession and Occupancy.**
190  Possession and occupancy will be given to Buyer at the Closing. Buyer shall be entitled to possession of the Property, and any rents or
191  profits from the Property, immediately upon the delivery of the Deed and the Closing. Seller shall pay off any person with a claim or right
192  affecting the Property from the proceeds of this sale at or before the Closing.

194  **(B) Tenancies.** ☐ Applicable   ☒ Not Applicable
195  Occupancy will be subject to the tenancies listed below as of the Closing. Seller represents that the tenancies are not in violation of any
196  existing Municipal, County, State or Federal rules, regulations or laws. Seller agrees to transfer all security deposits to Buyer at the Closing
197  and to provide to Brokers and Buyer a copy of all leases concerning the tenancies, if any, along with this Contract when it is signed by
198  Seller. Seller represents that such leases can be assigned and that Seller will assign said leases, and Buyer agrees to accept title subject to
199  these leases.

| TENANT'S NAME | LOCATION | RENT | SECURITY DEPOSIT | TERM |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

207  **13. LEAD-BASED PAINT AND/OR LEAD-BASED PAINT HAZARD: (This section is applicable only to all dwellings**
208  **built prior to 1978.)** ☐ Applicable ☒ Not Applicable
209  **(A) Document Acknowledgement.**
210  Buyer acknowledges receipt of the EPA pamphlet entitled "Protect Your Family From Lead In Your Home." Moreover, a copy of a
211  document entitled "Disclosure of Information and Acknowledgement Lead-Based Paint and Lead-Based Paint Hazards" has been fully
212  completed and signed by Buyer, Seller and Broker(s) and is appended to and made a part of this Contract.

214  **(B) Lead Warning Statement.**
215  Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such
216  property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead
217  poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient,
218  behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest
219  in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or
220  inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for
221  possible lead-based paint hazards is recommended prior to purchase.

223  **(C) Inspection.**
224  The law requires that, unless Buyer and Seller agree to a longer or shorter period, Seller must allow Buyer a ten (10) calendar day period
225  within which to complete an inspection and/or risk assessment of the Property as set forth in the next paragraph. Buyer, however, has the
226  right to waive this requirement in its entirety.

228  This Contract is contingent upon an inspection and/or risk assessment (the "Inspection") of the Property by a certified inspector/risk
229  assessor for the presence of lead-based paint and/or lead-based paint hazards. The Inspection shall be ordered and obtained by Buyer at
230  Buyer's expense within ten (10) calendar days after the attorney-review period is completed or, if this Contract is timely disapproved by an

Buyer's Initials: _____   Seller's Initials: _____

231  attorney as provided in the Attorney-Review Clause Section of this Contract, then within ten (10) calendar days after the parties agree to
232  the terms in this Contract ("Completion Date"). If the Inspection indicates that no lead-based paint or lead-based paint hazard is present
233  at the Property, this contingency clause shall be deemed null and void. If the Inspection indicates that lead-based paint or lead-based paint
234  hazard is present at the Property, this contingency clause will terminate at the time set forth above unless, within five (5) business days from
235  the Completion Date, Buyer delivers a copy of the inspection and/or risk assessment report to Seller and Brokers and (1) advises Seller
236  and Brokers, in writing that Buyer is voiding this Contract; or (2) delivers to Seller and Brokers a written amendment (the "Amendment")
237  to this Contract listing the specific existing deficiencies and corrections required by Buyer. The Amendment shall provide that Seller
238  agrees to (a) correct the deficiencies; and (b) furnish Buyer with a certification from a certified inspector/risk assessor that the deficiencies
239  have been corrected, before the Closing. Seller shall have _____ (if left blank, then 3) business days after receipt of the Amendment
240  to sign and return it to Buyer or send a written counter-proposal to Buyer. If Seller does not sign and return the Amendment or fails to
241  offer a counter-proposal, this Contract shall be null and void. If Seller offers a counter-proposal, Buyer shall have _____ (if left
242  blank, then 3) business days after receipt of the counter-proposal to accept it. If Buyer fails to accept the counter-proposal within the time
243  limit provided, this Contract shall be null and void.
244

245  **14. POINT-OF-ENTRY TREATMENT ("POET") SYSTEMS:** ☐ Applicable   ☒ Not Applicable
246  A point-of-entry treatment ("POET") system is a type of water treatment system used to remove contaminants from the water entering a
247  structure from a potable well, usually through a filtration process. Seller represents that a POET system has been installed to an existing
248  well on the Property and the POET system was installed and/or maintained using funds received from the New Jersey Spill Compensation
249  Fund Claims Program, N.J.S.A. 58:10-23.11, et seq. The Buyer understands that Buyer will not be eligible to receive any such funds for the
250  continued maintenance of the POET system. Pursuant to N.J.A.C. 7:1J-2.5(c), Seller agrees to notify the Department of Environmental
251  Protection within thirty (30) calendar days of executing this Contract that the Property is to be sold.
252

253  **15. CESSPOOL REQUIREMENTS:** ☐ Applicable   ☒ Not Applicable
254  **(This section is applicable if the Property has a cesspool, except in certain limited circumstances set forth in N.J.A.C.**
255  **7:9A-3.16.)** Pursuant to New Jersey's Standards for Individual Subsurface Sewage Disposal Systems, N.J.A.C. 7:9A (the "Standards"), if
256  this Contract is for the sale of real property at which any cesspool, privy, outhouse, latrine or pit toilet (collectively "Cesspool") is located,
257  the Cesspool must be abandoned and replaced with an individual subsurface sewage disposal system at or before the time of the real
258  property transfer, except in limited circumstances.
259

260  **(A)** Seller represents to Buyer that ☐ no Cesspool is located at or on the Property, or ☐ one or more Cesspools are located at or on the
261  Property. **[If there are one or more Cesspools, then also check EITHER Box 1 or 2 below.]**
262

263  1. ☐ Seller agrees that, prior to the Closing and at its sole cost and expense, Seller shall abandon and replace any and all Cesspools
264  located at or on the Property and replace such Cesspools with an individual subsurface sewage disposal system ("System") meeting all
265  the requirements of the Standards. At or prior to the Closing, Seller shall deliver to Buyer a certificate of compliance ("Certificate of
266  Compliance") issued by the administrative authority ("Administrative Authority") (as those terms are defined in N.J.A.C. 7:9A-2.1) with
267  respect to the System. Notwithstanding the foregoing, if the Administrative Authority determines that a fully compliant system cannot
268  be installed at the Property, then Seller shall notify Buyer in writing within three (3) business days of its receipt of the Administrative
269  Authority's determination of its intent to install either a nonconforming System or a permanent holding tank, as determined by the
270  Administrative Authority ("Alternate System"), and Buyer shall then have the right to void this Contract by notifying Seller in writing
271  within seven (7) business days of receipt of the notice from Seller. If Buyer fails to timely void this Contract, Buyer shall have waived its
272  right to cancel this Contract under this paragraph, and Seller shall install the Alternate System and, at or prior to the Closing, deliver
273  to Buyer such Certificate of Compliance or other evidence of approval of the Alternate System as may be issued by the Administrative
274  Authority. The delivery of said Certificate of Compliance or other evidence of approval shall be a condition precedent to the Closing; or
275

276  2. ☐ Buyer agrees that, at its sole cost and expense, Buyer shall take all actions necessary to abandon and replace any and all Cesspools
277  located at or on the Property and replace such Cesspools with a System meeting all the requirements of the Standards or an Alternate
278  System. Buyer shall indemnify and hold Seller harmless for any and all costs, damages, claims, fines, penalties and assessments (including
279  but not limited to reasonable attorneys' and experts' fees) arising from Buyer's violation of this paragraph. This paragraph shall survive
280  the Closing.
281

282  **(B)** If prior to the Closing, either Buyer or Seller becomes aware of any Cesspool at or on the Property that was not disclosed by Seller
283  at or prior to execution of this Contract, the party with knowledge of the newly identified Cesspool shall promptly, but in no event later
284  than three (3) business days after receipt of such knowledge, advise the other party of the newly identified Cesspool in writing. In such
285  event, the parties in good faith shall agree, no later than seven (7) business days after sending or receiving the written notice of the newly
286  identified Cesspool, or the day preceding the scheduled Closing, whichever is sooner, to proceed pursuant to subsection (A) 1 or 2 above
287  or such other agreement as satisfies the Standards, or either party may terminate this Contract.
288

289
290  **16. INSPECTION CONTINGENCY CLAUSE:**

Buyer's Initials: PB  G.P.

Seller's Initials: H.S.H

**(A) Responsibilities of Home Ownership.**

Buyer and Seller acknowledge and agree that, because the purchase of a home is one of the most significant investments a person can make in a lifetime, all aspects of this transaction require considerable analysis and investigation by Buyer before closing title to the Property. While Brokers and salespersons who are involved in this transaction are trained as licensees under the New Jersey Licensing Act they readily acknowledge that they have had no special training or experience with respect to the complexities pertaining to the multitude of structural, topographical and environmental components of this Property. For example, and not by way of limitation, Brokers and salespersons have no special training, knowledge or experience with regard to discovering and/or evaluating physical defects, including structural defects, roof, basement, mechanical equipment, such as heating, air conditioning, and electrical systems, sewage, plumbing, exterior drainage, termite, and other types of insect infestation or damage caused by such infestation. Moreover, Brokers and salespersons similarly have no special training, knowledge or experience with regard to evaluation of possible environmental conditions which might affect the Property pertaining to the dwelling, such as the existence of radon gas, formaldehyde gas, airborne asbestos fibers, toxic chemicals, underground storage tanks, lead, mold or other pollutants in the soil, air or water.

**(B) Radon Testing, Reports and Mitigation.**

**(Radon is a radioactive gas which results from the natural breakdown of uranium in soil, rock and water. It has been found in homes all over the United States and is a carcinogen. For more information on radon, go to www.epa.gov/radon/pubs/citguide.html and www.nj.gov/dep/rpp/radon or call the NJ Radon Hot Line at 800-648-0394 or 609-984-5425.)**

If the Property has been tested for radon prior to the date of this Contract, Seller agrees to provide to Buyer, at the time of the execution of this Contract, a copy of the result of the radon test(s) and evidence of any subsequent radon mitigation or treatment of the Property. In any event, Buyer shall have the right to conduct a radon inspection/test as provided and subject to the conditions set forth in paragraph (D) below. If any test results furnished or obtained by Buyer indicate a concentration level of 4 picocuries per liter (4.0 pCi/L) or more in the subject dwelling, Buyer shall then have the right to void this Contract by notifying Seller in writing within seven (7) business days of the receipt of any such report. For the purposes of this Section 16, Seller and Buyer agree that, in the event a radon gas concentration level in the subject dwelling is determined to be less than 4 picocuries per liter (4.0 pCi/L) without any remediation, such level of radon gas concentration shall be deemed to be an acceptable level ("Acceptable Level") for the purposes of this Contract. Under those circumstances, Seller shall be under no obligation to remediate, and this contingency clause as it relates to radon shall be deemed fully satisfied.

If Buyer's qualified inspector reports that the radon gas concentration level in the subject dwelling is four picocuries per liter (4.0 pCi/L) or more, Seller shall have a seven (7) business day period after receipt of such report to notify Buyer in writing that Seller agrees to remediate the gas concentration to an Acceptable Level (unless Buyer has voided this Contract as provided in the preceding paragraph). Upon such remediation, the contingency in this Contract which relates to radon shall be deemed fully satisfied. If Seller fails to notify Buyer of Seller's agreement to so remediate, such failure to so notify shall be deemed to be a refusal by Seller to remediate the radon level to an Acceptable Level, and Buyer shall then have the right to void this Contract by notifying Seller in writing within seven (7) calendar days thereafter. If Buyer fails to void this Contract within the seven (7) business day period, Buyer shall have waived Buyer's right to cancel this Contract and this Contract shall remain in full force and effect, and Seller shall be under no obligation to remediate the radon gas concentration. If Seller agrees to remediate the radon to an Acceptable Level, such remediation and associated testing shall be completed by Seller prior to the Closing.

**(C) Infestation and/or Damage By Wood Boring Insects.**

Buyer shall have the right to have the Property inspected by a licensed exterminating company of Buyer's choice, for the purpose of determining if the Property is free from infestation and damage from termites or other wood destroying insects. If Buyer chooses to make this inspection, Buyer shall pay for the inspection unless Buyer's lender prohibits Buyer from paying, in which case Seller shall pay. The inspection must be completed and written reports must be furnished to Seller and Broker(s) within _____ (if left blank, then 14) calendar days after the attorney-review period is completed or, if this Contract is timely disapproved by an attorney as provided in the Attorney-Review Clause Section of this Contract, then within _____ (if left blank, then 14) calendar days after the parties agree to the terms of this Contract. This report shall state the nature and extent of any infestation and/or damage and the full cost of treatment for any infestation. Seller agrees to treat any infestation and cure any damage at Seller's expense prior to Closing, provided, however, if the cost to cure exceeds 1% of the purchase price of the Property, then either party may void this Contract provided they do so within _____ (if left blank, then 7) business days after the report has been delivered to Seller and Brokers. If Buyer and Seller are unable to agree upon who will pay for the cost to cure and neither party timely voids this Contract, then Buyer will be deemed to have waived its right to terminate this Contract and will bear the cost that is over 1% of the purchase price, with Seller bearing the cost that is under 1% of the purchase price.

**(D) Buyer's Right to Inspections.**

Buyer acknowledges that the Property is being sold in an "as is" condition and that this Contract is entered into based upon the knowledge of Buyer as to the value of the land and whatever buildings are upon the Property, and not on any representation made by Seller, Brokers or their agents as to character or quality of the Property. Therefore, Buyer, at Buyer's sole cost and expense, is granted the right to have the dwelling and all other aspects of the Property, inspected and evaluated by "qualified inspectors" (as the term is defined in subsection G below) for the purpose of determining the existence of any physical defects or environmental conditions such as outlined above. If Buyer chooses to make inspections referred to in this paragraph, such inspections must be completed, and written reports including a list of

Buyer's Initials: _____

Seller's Initials: _____  H.S.H

repairs Buyer is requesting must be furnished to Seller and Brokers within \_\_\_\_ (if left blank, then 14) calendar days after the attorney-review period is completed or, if this Contract is timely disapproved by an attorney as provided in the Attorney-Review Clause Section of this Contract, then within \_\_\_\_ (if left blank, then 14) calendar days after the parties agree to the terms of this Contract. If Buyer fails to furnish such written reports to Seller and Brokers within the \_\_\_\_ (if left blank, then 14) calendar days specified in this paragraph, this contingency clause shall be deemed waived by Buyer, and the Property shall be deemed acceptable by Buyer. The time period for furnishing the inspection reports is referred to as the "Inspection Time Period." Seller shall have all utilities in service for inspections.

### (E) Responsibility to Cure.

If any physical defects or environmental conditions (other than radon or woodboring insects) are reported by the qualified inspectors to Seller within the Inspection Time Period, Seller shall then have seven (7) business days after the receipt of such reports to notify Buyer in writing that Seller shall correct or cure any of the defects set forth in such reports. If Seller fails to notify Buyer of Seller's agreement to so cure and correct, such failure to so notify shall be deemed to be a refusal by Seller to cure or correct such defects. If Seller fails to agree to cure or correct such defects within the seven (7) business day period, or if the environmental condition at the Property (other than radon) is incurable and is of such significance as to unreasonably endanger the health of Buyer, Buyer shall then have the right to void this Contract by notifying Seller in writing within seven (7) business days thereafter. If Buyer fails to void this Contract within the seven (7) business day period, Buyer shall have waived Buyer's right to cancel this Contract and this Contract shall remain in full force, and Seller shall be under no obligation to correct or cure any of the defects set forth in the inspections. If Seller agrees to correct or cure such defects, all such repair work shall be completed by Seller prior to the closing of title. Radon at the Property shall be governed by the provisions of subsection (B), above.

### (F) Flood Hazard Area (if applicable).

The federal and state governments have designated certain areas as flood areas. If the Property is located in a flood area, the use of the Property may be limited. If Buyer's inquiry reveals that the Property is in a flood area, Buyer may cancel this Contract within ten (10) calendar days after the attorney-review period is completed or, if this Contract is timely disapproved by an attorney as provided in the Attorney-Review Clause Section of this Contract, then within ten (10) calendar days after the parties agree to the terms of this Contract. If the mortgage lender requires flood insurance, then Buyer shall be responsible for obtaining such insurance on the Property. For a flood policy to be in effect immediately, there must be a loan closing. There is a thirty (30) calendar day wait for flood policies to be in effect for cash transactions. Therefore, cash buyers are advised to make application and make advance payment for a flood policy at least thirty (30) calendar days in advance of closing if they want coverage to be in effect upon transfer of title.

Buyer's mortgage lender may require Buyer to purchase flood insurance in connection with Buyer's purchase of this Property. The National Flood Insurance Program ("NFIP") provides for the availability of flood insurance but also establishes flood insurance policy premiums based on the risk of flooding in the area where properties are located. Due to amendments to federal law governing the NFIP, those premiums are increasing and, in some cases, will rise by a substantial amount over the premiums previously charged for flood insurance for the Property. As a result, Buyer should not rely on the premiums paid for flood insurance on this Property previously as an indication of the premiums that will apply after Buyer completes the purchase. In considering Buyer's purchase of this Property, Buyer is therefore urged to consult with one or more carriers of flood insurance for a better understanding of flood insurance coverage, the premiums that are likely to be required to purchase such insurance and any available information about how those premiums may increase in the future.

### (G) Qualifications of Inspectors.

Where the term "qualified inspectors" is used in this Contract, it is intended to refer to persons or businesses that are licensed or certified by the State of New Jersey for such purpose.

### 17. MEGAN'S LAW STATEMENT:

Under New Jersey law, the county prosecutor determines whether and how to provide notice of the presence of convicted sex offenders in an area. In their professional capacity, real estate licensees are not entitled to notification by the county prosecutor under Megan's Law and are unable to obtain such information for you. Upon closing, the county prosecutor may be contacted for such further information as may be disclosable to you.

### 18. MEGAN'S LAW REGISTRY:

Buyer is notified that New Jersey law establishes an Internet Registry of Sex Offenders that may be accessed at www.njsp.org. Neither Seller nor any real estate broker nor salesperson make any representation as to the accuracy of the registry.

### 19. NOTIFICATION REGARDING OFF-SITE CONDITIONS: (Applicable to all resale transactions.)

Pursuant to the New Residential Construction Off-Site Conditions Disclosure Act, N.J.S.A. 46:3C-1, et. seq, the clerks of municipalities in New Jersey maintain lists of off-site conditions which may affect the value of residential properties in the vicinity of the off-site condition. Buyers may examine the lists and are encouraged to independently investigate the area surrounding this property in order to become familiar with any off-site conditions which may affect the value of the property. In cases where a property is located near the

Buyer's Initials: _____  Seller's Initials: _____ H.S.H

border of a municipality, buyers may wish to also examine the list maintained by the neighboring municipality.

## 20. AIR SAFETY AND ZONING NOTICE:

Any person who sells or transfers a property that is in an airport safety zone as set forth in the New Jersey Air Safety and Zoning Act of 1983, N.J.S.A. 6:1-80, et seq., and appearing on a municipal map used for tax purposes, as well as Seller's agent, shall provide notice to a prospective buyer that the property is located in an airport safety zone prior to the signing of the contract of sale. The Air Safety and Zoning Act also requires that each municipality in an airport safety zone enact an ordinance or ordinances incorporating the standards promulgated under the Act and providing for their enforcement within the delineated areas in the municipality. Buyer acknowledges receipt of the following list of airports and the municipalities that may be affected by them and that Buyer has the responsibility to contact the municipal clerk of any affected municipality concerning any ordinance that may affect the Property.

| Municipality | Airport(s) | Municipality | Airport(s) |
|---|---|---|---|
| Alexandria Tp. | Alexandria & Sky Manor | Manalapan Tp. (Monmouth Cty.) | Old Bridge |
| Andover Tp. | Aeroflex-Andover & Newton | Mansfield Tp. | Hackettstown |
| Bedminster Tp. | Somerset | Manville Bor. | Central Jersey Regional |
| Berkeley Tp. | Ocean County | Medford Tp. | Flying W |
| Berlin Bor. | Camden County | Middle Tp. | Cape May County |
| Blairstown Tp. | Blairstown | Millville | Millville Municipal |
| Branchburg Tp. | Somerset | Monroe Tp. (Gloucester Cty.) | Cross Keys & Southern Cross |
| Buena Bor. (Atlantic Cty.) | Vineland-Downtown | Monroe Tp. (Middlesex Cty.) | Old Bridge |
| Dennis Tp. | Woodbine Municipal | Montgomery Tp. | Princeton |
| Eagleswood Tp. | Eagles Nest | Ocean City | Ocean City |
| Ewing Tp. | Trenton-Mercer County | Old Bridge Tp. | Old Bridge |
| E. Hanover Tp. | Morristown Municipal | Oldsman Tp. | Oldmans |
| Florham Park Bor. | Morristown Municipal | Pemberton Tp. | Pemberton |
| Franklin Tp. (Gloucester Cty.) | Southern Cross & Vineland Downtown | Pequannock Tp. | Lincoln Park |
| Franklin Tp. (Hunterdon Cty.) | Sky Manor | Readington Tp. | Solberg-Hunterdon |
| Franklin Tp. (Somerset Cty.) | Central Jersey Regional | Rocky Hill Boro. | Princeton |
| Green Tp. | Trinca | Southampton Tp. | Red Lion |
| Hammonton Bor. | Hammonton Municipal | Springfield Tp. | Red Wing |
| Hanover Tp. | Morristown Municipal | Upper Deerfield Tp. | Bucks |
| Hillsborough Tp. | Central Jersey Regional | Vineland City | Kroelinger & Vineland Downtown |
| Hopewell Tp. (Mercer Cty.) | Trenton-Mercer County | Wall Tp. | Monmouth Executive |
| Howell Tp. | Monmouth Executive | Wantage Tp. | Sussex |
| Lacey Tp. | Ocean County | Robbinsville | Trenton-Robbinsville |
| Lakewood Tp. | Lakewood | West Milford Tp. | Greenwood Lake |
| Lincoln Park Bor. | Lincoln Park | Winslow Tp. | Camden County |
| Lower Tp. | Cape May County | Woodbine Bor. | Woodbine Municipal |
| Lumberton Tp. | Flying W & South Jersey Regional | | |

The following airports are not subject to the Airport Safety and Zoning Act because they are subject to federal regulation or within the jurisdiction of the Port of Authority of New York and New Jersey and therefore are not regulated by New Jersey: Essex County Airport, Linden Airport, Newark Liberty Airport, Teterboro Airport, Little Ferry Seaplane Base, Atlantic City International Airport, and Maguire Airforce Base and NAEC Lakehurst.

## 21. BULK SALES:

The New Jersey Bulk Sales Law, N.J.S.A. 54:50-38, (the "Law") applies to the sale of certain residential property. Under the Law, Buyer may be liable for taxes owed by Seller if the Law applies and Buyer does not deliver to the Director of the New Jersey Division of Taxation (the "Division") a copy of this Contract and a notice on a form required by the Division (the "Tax Form") at least ten (10) business days prior to the Closing. If Buyer decides to deliver the Tax Form to the Division, Seller shall cooperate with Buyer by promptly providing Buyer with any information that Buyer needs to complete and deliver the Tax Form in a timely manner. Buyer promptly shall deliver to Seller a copy of any notice that Buyer receives from the Division in response to the Tax Form.

The Law does not apply to the sale of a simple dwelling house, or the sale or lease of a seasonal rental property, if Seller is an individual, estate or trust, or any combination thereof, owning the simple dwelling house or seasonal rental property as joint tenants, tenants in common or tenancy by the entirety. A simple dwelling house is a one or two family residential building, or a cooperative or condominium unit used as a residential dwelling, none of which has any commercial property. A seasonal rental property is a time share, or a dwelling unit that is rented for residential purposes for a term of not more than 125 consecutive days, by an owner that has a permanent residence elsewhere.

If, prior to the Closing, the Division notifies Buyer to withhold an amount (the "Tax Amount") from the purchase price proceeds for

Buyer's Initials: _____  Seller's Initials: _____ H.S.H

possible unpaid tax liabilities of Seller, Buyer's attorney or Buyer's title insurance company (the "Escrow Agent") shall withhold the Tax Amount from the closing proceeds and place that amount in escrow (the "Tax Escrow"). If the Tax Amount exceeds the amount of available closing proceeds, Seller shall bring the deficiency to the Closing and the deficiency shall be added to the Tax Escrow. If the Division directs the Escrow Agent or Buyer to remit funds from the Tax Escrow to the Division or some other entity, the Escrow Agent or Buyer shall do so. The Escrow Agent or Buyer shall only release the Tax Escrow, or the remaining balance thereof, to Seller (or as otherwise directed by the Division) upon receipt of written notice from the Division that it can be released, and that no liability will be asserted under the Law against Buyer.

## 22. NOTICE TO BUYER CONCERNING INSURANCE:

Buyer should obtain appropriate casualty and liability insurance for the Property. Buyer's mortgage lender will require that such insurance be in place at Closing. Occasionally, there are issues and delays in obtaining insurance. Be advised that a "binder" is only a temporary commitment to provide insurance coverage and is not an insurance policy. Buyer is therefore urged to contact a licensed insurance agent or broker to assist Buyer in satisfying Buyer's insurance requirements.

## 23. MAINTENANCE AND CONDITION OF PROPERTY:

Seller agrees to maintain the grounds, buildings and improvements, in good condition, subject to ordinary wear and tear. The premises shall be in "broom clean" condition and free of debris as of the Closing. Seller represents that all electrical, plumbing, heating and air conditioning systems (if applicable), together with all fixtures included within the terms of the Contract now work and shall be in proper working order at the Closing. Seller further states, that to the best of Seller's knowledge, there are currently no leaks or seepage in the roof, walls or basement. Seller does not guarantee the continuing condition of the premises as set forth in this Section after the Closing.

## 24. RISK OF LOSS:

The risk of loss or damage to the Property by fire or otherwise, except ordinary wear and tear, is the responsibility of Seller until the Closing.

## 25. INITIAL AND FINAL WALK-THROUGHS:

In addition to the inspections set forth elsewhere in this Contract, Seller agrees to permit Buyer or Buyer's duly authorized representative to conduct an initial and a final walk-through inspection of the interior and exterior of the Property at any reasonable time before the Closing. Seller shall have all utilities in service for the inspections.

## 26. ADJUSTMENTS AT CLOSING:

Seller shall pay for the preparation of the Deed, realty transfer fee, lien discharge fees, if any, and one-half of the title company charges for disbursements and attendance allowed by the Commissioner of Insurance; but all searches, title insurance premium and other conveyancing expenses are to be paid for by Buyer.

Seller and Buyer shall make prorated adjustments at Closing for items which have been paid by Seller or are due from Seller, such as real estate taxes, water and sewer charges that could be claims against the Property, rental and security deposits, association and condominium dues, and fuel in Seller's tank. Adjustments of fuel shall be based upon physical inventory and pricing by Seller's supplier. Such determination shall be conclusive.

If Buyer is assuming Seller's mortgage loan, Buyer shall credit Seller for all monies, such as real estate taxes and insurance premiums paid in advance or on deposit with Seller's mortgage lender. Buyer shall receive a credit for monies, which Seller owes to Seller's Mortgage lender, such as current interest or a deficit in the mortgage escrow account.

If the Property is used or enjoyed by not more than four families and the purchase price exceeds $1,000,000, then pursuant to N.J.S.A. 46:15-7.2, Buyer will be solely responsible for payment of the fee due for the transfer of the Property, which is the so-called "Mansion Tax", in the amount of one (1%) percent of the purchase price.

Unless an exemption applies, non-resident individuals, estates, or trusts that sell or transfer real property in New Jersey are required to make an estimated gross income tax payment to the State of New Jersey on the gain from a transfer/sale of real property (the so-called "Exit Tax,") as a condition of the recording of the deed.

If Seller is a foreign person (an individual, corporation or entity that is a non-US resident) under the Foreign Investment in Real Property Tax Act of 1980, as amended ("FIRPTA"), then with a few exceptions, a portion of the proceeds of sale may need to be withheld from Seller and paid to the Internal Revenue Service as an advance payment against Seller's tax liability.

Seller agrees that, if applicable, Seller will (a) be solely responsible for payment of any state or federal income tax withholding amount(s) required by law to be paid by Seller (which Buyer may deduct from the purchase price and pay at the Closing); and (b) execute and deliver to Buyer at the Closing any and all forms, affidavits or certifications required under state and federal law to be filed in connection with the amount(s) withheld.

Buyer's Initials: _____

Seller's Initials: _____ H·S·H

531 There shall be no adjustment on any Homestead Rebate due or to become due.
532
533 **27. FAILURE OF BUYER OR SELLER TO CLOSE:**
534 If Seller fails to close title to the Property in accordance with this Contract, Buyer then may commence any legal or equitable action
535 to which Buyer may be entitled. If Buyer fails to close title in accordance with this Contract, Seller then may commence an action
536 for damages it has suffered, and, in such case, the deposit monies paid on account of the purchase price shall be applied against such
537 damages. If Buyer or Seller breach this Contract, the breaching party will nevertheless be liable to Brokers for the commissions in the
538 amount set forth in this Contract, as well as reasonable attorneys' fees, costs and such other damages as are determined by the Court.
539
540 **28. CONSUMER INFORMATION STATEMENT ACKNOWLEDGMENT:**
541 By signing below, Seller and Buyer acknowledge they received the Consumer Information Statement on New Jersey Real Estate
542 Relationships from the Broker(s) prior to the first showing of the Property.
543
544 **29. DECLARATION OF BROKER(S)'S BUSINESS RELATIONSHIP(S):**
545 (A) Weichert, Realtors_____, (name of firm) and its authorized
546 representative(s) Aanand Bhanderi_____
547 _____
548 **(name(s) of licensee(s))**
549
550 **ARE OPERATING IN THIS TRANSACTION AS A (indicate one of the following)**
551 ☐ SELLER'S AGENT   ☒ BUYER'S AGENT   ☐ DISCLOSED DUAL AGENT   ☐ TRANSACTION BROKER.
552
553 **(B) (If more than one firm is participating, provide the following.) INFORMATION SUPPLIED BY**_____
554 Realty 7, LLC Fort Lee_____ (name of other firm.) HAS INDICATED THAT IT IS
555 **OPERATING IN THIS TRANSACTION AS A (indicate one of the following)**
556 ☒ SELLER'S AGENT   ☐ BUYER'S AGENT   ☐ TRANSACTION BROKER.
557
558 **30. BROKERS' INFORMATION AND COMMISSION:**
559 The commission, in accord with the previously executed listing agreement, shall be due and payable at the Closing and payment by Buyer
560 of the purchase consideration for the Property. Seller hereby authorizes and instructs whomever is the disbursing agent to pay the full
561 commission as set forth below to the below-mentioned Brokerage Firm(s) out of the proceeds of sale prior to the payment of any such
562 funds to Seller. Buyer consents to the disbursing agent making said disbursements. The commission shall be paid upon the purchase price
563 set forth in Section 2 and shall include any amounts allocated to, among other things, furniture and fixtures.
564
565 Realty 7, LLC Fort Lee_____ 0561496_____
566 Listing Firm                                REC License ID
567
568 Jennifer Noh_____ 0560728_____
   Listing Agent                              REC License ID
569
570 2160 N Central Rd., Suite 207_____
571 Address
572
573 201-292-7777_____ 201-482-0423_____ 201-961-2498_____
   Office Telephone            Fax                    Agent Cell Phone
574
575 jennifernohrealty7@gmail.com_____ (Per Listing Agreement)
   E-mail                        **Commission due Listing Firm**
576
577 **Weichert, Realtors**_____ 7802605_____
578 Participating Firm                          REC License ID
579
580 **Aanand Bhanderi**_____ 175546_____
581 Participating Agent                         REC License ID
582
583 **1 Ruckman Rd, Closter, NJ 07624**_____
   Address
584
585 **(201) 767-8600**_____ **(201) 767-3317**_____ **(201) 658-4643**_____
586 Office Telephone            Fax                    Agent Cell Phone
587
588 abhand321@gmail.com_____ 2%-S350_____
   E-mail                        **Commission due Participating Firm**
589 **31. EQUITABLE LIEN:**
590

Buyer's Initials: PP (n.P.)     Seller's Initials: H.S.H

591 Under New Jersey law, brokers who bring the parties together in a real estate transaction are entitled to an equitable lien in the amount
592 of their commission. This lien attaches to the property being sold from when the contract of sale is signed until the closing and then to
593 the funds due to seller at closing, and is not contingent upon the notice provided in this Section. As a result of this lien, the party who
594 disburses the funds at the Closing in this transaction should not release any portion of the commission to any party other than Broker(s)
595 and, if there is a dispute with regard to the commission to be paid, should hold the disputed amount in escrow until the dispute with
596 Broker(s) is resolved and written authorization to release the funds is provided by Broker(s).
597

598 **32. DISCLOSURE THAT BUYER OR SELLER IS A REAL ESTATE LICENSEE:** ☐ Applicable    ☐ Not Applicable
599 A real estate licensee in New Jersey who has an interest as a buyer or seller of real property is required to disclose in the sales contract
600 that the person is a licensee. _____ therefore discloses that he/she is licensed in New Jersey as
601 a real estate ☐ broker ☐ broker-salesperson ☐ salesperson ☐ referral agent.
602

603 **33. BROKERS TO RECEIVE CLOSING DISCLOSURE AND OTHER DOCUMENTS:**
604 Buyer and Seller agree that Broker(s) involved in this transaction will be provided with the Closing Disclosure documents and any
605 amendments to those documents in the same time and manner as the Consumer Financial Protection Bureau requires that those
606 documents be provided to Buyer and Seller. In addition, Buyer and Seller agree that, if one or both of them hire an attorney who
607 disapproves this Contract as provided in the Attorney-Review Clause Section, then the attorney(s) will notify the Broker(s) in writing when
608 either this Contract is finalized or the parties decide not to proceed with the transaction.
609

610 **34. PROFESSIONAL REFERRALS:**
611 Seller and Buyer may request the names of attorneys, inspectors, engineers, tradespeople or other professionals from their Brokers
612 involved in the transaction. Any names provided by Broker(s) shall not be deemed to be a recommendation or testimony of competency of
613 the person or persons referred. Seller and Buyer shall assume full responsibility for their selection(s) and hold Brokers and/or salespersons
614 harmless for any claim or actions resulting from the work or duties performed by these professionals.
615

616 **35. ATTORNEY-REVIEW CLAUSE:**
617 **(1) Study by Attorney.**
618 Buyer or Seller may choose to have an attorney study this Contract. If an attorney is consulted, the attorney must complete his or her
619 review of the Contract within a three-day period. This Contract will be legally binding at the end of this three-day period unless an
620 attorney for Buyer or Seller reviews and disapproves of the Contract.
621

622 **(2) Counting the Time.**
623 You count the three days from the date of delivery of the signed Contract to Buyer and Seller. You do not count Saturdays, Sundays or
624 legal holidays. Buyer and Seller may agree in writing to extend the three-day period for attorney review.
625

626 **(3) Notice of Disapproval.**
627 If an attorney for the Buyer or Seller reviews and disapproves of this Contract, the attorney must notify the Broker(s) and the other party
628 named in this Contract within the three-day period. Otherwise this Contract will be legally binding as written. The attorney must send
629 the notice of disapproval to the Broker(s) by fax, email, personal delivery, or overnight mail with proof of delivery. Notice by overnight
630 mail will be effective upon mailing. The personal delivery will be effective upon delivery to the Broker's office. The attorney may also,
631 but need not, inform the Broker(s) of any suggested revision(s) in the Contract that would make it satisfactory.
632

633 **36. NOTICES:**
634 All notices shall be by certified mail, fax, email, recognized overnight courier or electronic document (except for notices under the
635 Attorney-Review Clause Section) or by delivering it personally. The certified letter, email, reputable overnight carrier, fax or electronic
636 document will be effective upon sending. Notices to Seller and Buyer shall be addressed to the addresses in Section 1, unless otherwise
637 specified in writing by the respective party.
638

639 **37. NO ASSIGNMENT:**
640 This Contract shall not be assigned without the written consent of Seller. This means that Buyer may not transfer to anyone else Buyer's
641 rights under this Contract to purchase the Property.
642

643 **38. ELECTRONIC SIGNATURES AND DOCUMENTS:**
644 Buyer and Seller agree that the New Jersey Uniform Electronic Transaction Act, N.J.S.A. 12A:12-1 to 26, applies to this transaction,
645 including but not limited to the parties and their representatives having the right to use electronic signatures and electronic documents that
646 are created, generated, sent, communicated, received or stored in connection with this transaction. Since Section 11 of the Act provides
647 that acknowledging an electronic signature is not necessary for the signature of such a person where all other information required to
648 be included is attached to or logically associated with the signature or record, such electronic signatures, including but not limited to an
649 electronic signature of one of the parties to this Contract, do not have to be witnessed.
650

Buyer's Initials: _____    Seller's Initials: _____ H.S.H

651 **39. CORPORATE RESOLUTIONS:**
652 If Buyer or Seller is a corporate or other entity, the person signing below on behalf of the entity represents that all required corporate
653 resolutions have been duly approved and the person has the authority to sign on behalf of the entity.
654

655 **40. ENTIRE AGREEMENT; PARTIES LIABLE:**
656 This Contract contains the entire agreement of the parties. No representations have been made by any of the parties, the Broker(s) or its
657 salespersons, except as set forth in this Contract. This Contract is binding upon all parties who sign it and all who succeed to their rights
658 and responsibilities and only may be amended by an agreement in writing signed by Buyer and Seller.
659

660 **41. APPLICABLE LAWS:**
661 This Contract shall be governed by and construed in accordance with the laws of the State of New Jersey and any lawsuit relating to
662 this Contract or the underlying transaction shall be venued in the State of New Jersey.
663

664 **42. ADDENDA:**
665 The following additional terms are included in the attached adenda or riders and incorporated into this Contract (check if applicable):
666 ☐ Buyer's Property Sale Contingency ☐ Properties With Three (3) or More Units
667 ☐ Condominium/Homeowner's Associations ☐ Seller Concession
668 ☐ FHA/VA Loans ☐ Short Sale
669 ☐ Lead Based Paint Disclosure (Pre-1978) ☐ Solar Panel
670 ☐ New Construction ☐ Swimming Pools
671 ☐ Private Sewage Disposal (Other than Cesspool) ☐ Underground Fuel Tank(s)
672 ☐ Private Well Testing
673

674 **43. ADDITIONAL CONTRACTUAL PROVISIONS:**
675 This is an all-cash deal. Buyer has no contingencies. Buyer's Agent is an immediate family member, and
676 related, to the buyer.
677
678 BUYER IS RESPONSIBLE FOR OBTAINING CERTIFICATE OF OCCUPANCY
679
680 BUYER AGREES TO PURCHASE THE HOUSE IN "AS IS CONDITION"
681
682
683
684

685 It is normal and customary for Buyers to secure certain services such as: mortgage financing, homeowner's insurance,
686 closing settlement services, inspection and moving services before purchasing and moving into a home. Instead of
687 managing these services as independent transactions, Weichert® provides Buyers with a unique experience that we call
688 the *All Under One Roof℠ Customer Experience.*

689 This experience allows Weichert® to integrate and customize all the steps in the home buying transaction so that Buyers
690 can take advantage of the most cost-effective, convenient and coordinated services in the real estate industry.

691 Buyer authorizes Weichert® to provide the following *All Under One Roof℠* services, at no charge:
692 • *Mortgage pre-approval and commitment review* • *Home inspection quote*
693 • *Homeowner's insurance quote and policy offer* • *Home warranty quote*
694 • *Title insurance and closing services quote* • *Moving services quote and scheduling commitment*

695 WITNESS:
696 _____ _____ 1/28/20
697 BUYER **Pravin Bhanderi** Date
698 _____ G. P. Bhanderi 1/28/2020
699 BUYER **Gita Bhanderi** Date
700
701 _____ _____
702 BUYER Date
703 _____ _____
704 BUYER Date
705 _____ SELLER **Ki Kim** Date
706 _____ _____
707 SELLER **Hye Ha** Date
708 _____ _____
709 SELLER Date
710 _____ _____
SELLER Date

Buyer's Initials: [B] [G.P.]    Seller's Initials: [H.S.H]

# NOTICE
## TO BUYER AND SELLER
### READ THIS NOTICE BEFORE SIGNING THE CONTRACT

The Law requires real estate brokers to give you the following information before you sign this contract. It requires us to tell you that you must read all of it before you sign. The purpose is to help you in this purchase or sale.

1) As a real estate broker, I represent: ☐ the seller, not the buyer;  ☒ the buyer, not the seller; ☐ both the seller and the buyer;  ☐ neither the seller nor the buyer. The title company does not represent either the seller or the buyer.

2) You will not get any legal advice unless you have your own lawyer. Neither I nor anyone from the title company can give legal advice to either the buyer or the seller. If you do not hire a lawyer, no one will represent you in legal matters now or at the closing. Neither I nor the title company will represent you in those matters.

3) The contract is the most important part of the transaction. It determines your rights, risks, and obligations. Signing the contract is a big step. A lawyer would review the contract, help you to understand it, and to negotiate its terms.

4) The contract becomes final and binding unless your lawyer cancels it within the following three business days. If you do not have a lawyer, you cannot change or cancel the contract unless the other party agrees. Neither can the real estate broker nor the title insurance company change the contract.

5) Another important service of a lawyer is to order a survey, title report, or other important reports. The lawyer will review them and help to resolve any questions that may arise about the ownership and condition of the property. These reports and survey can cost you a lot of money. A lawyer will also prepare the documents needed to close title and represent you at the closing.

6) A buyer without a lawyer runs special risks. Only a lawyer can advise a buyer about what to do if problems arise concerning the purchase of this property. The problems may be about the seller's title, the size and shape of the property, or other matters that may affect the value of the property. If either the broker or the title company knows about the problems, they should tell you. But they may not recognize the problem, see it from your point of view, or know what to do. Ordinarily, the broker and the title company have an interest in seeing that the sale is completed, because only then do they usually receive their commissions. So, their interests may differ from yours.

7) Whether you retain a lawyer is up to you. It is your decision. The purpose of this notice is to make sure that you have the information needed to make your decision.

SELLER Ki Kim _____ DATE _____

SELLER Hye Ha _____ DATE _____

SELLER _____ DATE _____

SELLER _____ DATE _____

Listing Broker _____

BUYER Pravin Bhanderi _____ DATE 1/28/2020

BUYER Gita Bhanderi _____ DATE 1/28/2020

BUYER _____ DATE _____

BUYER _____ DATE _____

Selling Broker Aanand Bhanderi

Prepared by: **Aanand Bhanderi** _____
Name of Real Estate Licensee

# Exhibit B



DATE : Feb 21, 2020

TO :   Andy Weisman Attorney at Law        ( Buyer's  Attorney )
       Sung Min Kim Attorney at Law        ( Seller's  Attorney )

RE. :   Seller : Ki Hyung Kim & Hye Sook Ha.
        Buyer : Pravin Bhanderi & Gita Bhanderi

PROPERTY ADDRESS :   41 Brenner Pl, Alpine, NJ 07620

Commission Due for Services Rendered on the Above Referenced Transaction:

SALE PRICE                          : $ 3,300,000.00

COMMISSION  (2% + $350) )           : $ 66,350.00

*Total commission due to Realty 7 LLC     : $ 66,350.00

Please make check payable to :   Realty 7 LLC. ( License # : 0561496 )

Thank you.

Jennifer Noh
Lic # : 0560728
Tax ID # : 55 - 0890458

Realty 7 LLC, 2160 N. Central Rd,  Suite 207 Fort Lee,  NJ 07024
Cell : (201) 961-2498,  Office : (201) 291-7777,  Fax : (201) 482-0423
Web Site : www. Realty7.com
Email : Jennifernohrealty7@gmail.com

# Exhibit C

# Weichert®

## Real Estate · Mortgage · Insurance · Closing Services

Ki Kim / Hye Ha
41 Brenner Place
Alpine, NJ  07620

RE: REAL ESTATE BROKERAGE FEE ON
    THE SALE OF PROPERTY AT:
    41 Brenner Place
    Alpine, NJ  07620

Thank you for the opportunity to be of service to you in the sale
of the above referenced property. Our best wishes are with you in your
future endeavors.

For and in consideration of services rendered in connection with the
sale of the above captioned property:

SALE PRICE:    $3,300,000    COMM RATE:    2.00%    $66,000.00

Commission due Weichert, Realtors . . . . . . . . . . .    $65,650.00
    (2.00% Sales Commission - $350.00)

Please provide copies of the HUD statement or Closing Disclosure(s)
reflecting transactions for both the buyer and the seller to Weichert,
Realtors for our files.

Sincerely,

Weichert, Realtors

                              DATE:  _____

## Weichert, Realtors® Alpine/Closter

O:201.767.8600 · F:201.767.3317 · One Ruckman Road · Closter, NJ 07624